Andrew W. Stavros (8615)
Austin B. Egan (13203)
Adam G. Clark (13047)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: 801.758.7604
andy@stavroslaw.com
austin@stavroslaw.com
adam@stavroslaw.com

*Attorneys for Plaintiff Charles Hall*

**IN THE UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CHARLES HALL,<br><br>      Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF UTAH;<br><br>      Defendant. | **COMPLAINT**<br><br>Case No. 2:24-cv-00456<br><br>Judge _____ |

Plaintiff Charles Hall, by and through his counsel of record, brings this Complaint against Defendant University of Utah.

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Charles Hall ("Dr. Hall") is a resident of Salt Lake County, State of Utah.

2.  Defendant University of Utah ("University") is a state institution of higher education located and operating in Salt Lake City, Utah.

3.  At all relevant times hereto, the University received Federal financial assistance and was therefore subject to the requirements of Title IX of the Education Amendments of 1972,

1

20 U.S.C. § 1681, *et seq.* ("Title IX").

4. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. The unlawful acts and omissions giving rise to this action occurred in Salt Lake County, State of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division.

6. This action is properly brought in the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) because claims asserted herein arose in this judicial district. Accordingly, venue is proper pursuant to 28 U.S.C. §§ 125 and 1391.

## FACTUAL ALLEGATIONS

7. In or around February 2014, the University hired Dr. Hall as a Clinical Pharmacist at the University of Utah Hospitals and Clinics, which are part of the University of Utah Health Care system.

8. In or around 2015, Dr. Hall was promoted to a position in Oncology Infusion Center at the Huntsman Cancer Hospital.

9. Dr. Hall has diligently completed his job responsibilities throughout his employment. Dr. Hall's supervisors consistently gave him fully successful evaluations in each annual performance review from 2014 through 2022.

10. On or about October 6, 2022, Kavish Choudhary ("Choudhary"), Chief Pharmacy Officer, issued a Notification of Pre-Disciplinary Conference for an alleged conflict of interest related to Dr. Hall's ownership interest in GMT Pharmacy PC dba Haven Home Cancer Services.

11. During a meeting with Choudhary on or about October 7, 2022, Dr. Hall disputed any conflict of interest because, among other things, GMT Pharmacy was pre-revenue, he has

received no dividends or other payments from GMT Pharmacy, GMT Pharmacy was not an operating business, and he fully disclosed details of GMT Pharmacy to his supervisor, Scott Silverstein ("Silverstein").

12. At the conclusion of the meeting, Choudhary decided to place Dr. Hall on administrative leave while the University reviewed the matter.

13. On or about October 20, 2023, Choudhary and Silverstein issued a Notification of Decision to Terminate Employment to Dr. Hall for violating the Conflict of Interest Policy by having an ownership interest in GMT Pharmacy.

14. Dr. Hall grieved the decision to terminate his employment under University Policy 5-203 by requesting a hearing by a committee comprised of an objective panel of staff members.

15. On or about January 10, 2023, a Staff Grievance Committee Hearing was held where Dr. Hall presented evidence disputing the existence of any conflict of interest.

16. On or about January 12, 2023, the Staff Grievance Committee issued a decision recommending that the University reinstate Dr. Hall to his position as it found he did not violate any policies.

17. Rather than fully reinstate Dr. Hall at the Oncology Infusion Center, Choudhary issued a Final Written Warning ("FWW") on or about February 23, 2023.

18. The FWW essentially uses the same reasoning the Staff Grievance Committee rejected when it recommended Dr. Hall be reinstated to his position and stated that Dr. Hall would be placed in a position or location to minimize any potential conflict of interest Dr. Hall's financial relationship with GMT Pharmacy.

19. On or about March 8, 2023, the University informed Dr. Hall that he would not be reinstated to his position at the Oncology Infusion Center. Instead, Bryon Garritson, the Director

of Employee Relations, informed Dr. Hall that his new position was a Retail Pharmacist, and he would work at Sugarhouse Retail Pharmacy (the "Sugarhouse Pharmacy").

20. On March 13, 2023, Dr. Hall started working at the Sugarhouse Pharmacy. Dr. Hall's new supervisor was Jacob Murrill ("Murrill").

21. On or about March 20, 2023, Murrill placed Dr. Hall on administrative leave for allegations that Dr. Hall violated the University's Sexual Harassment Policy, and that the University's Office of Equal Opportunity ("OEO") was investigating because "a sexual harassment discrimination complaint" was filed against Dr. Hall.

22. During this conversation, Dr. Hall suggested that Murrill obtain the video surveillance from the multiple cameras located throughout the pharmacy. Murrill stated that he was not aware of the specific allegations and he told Dr. Hall to direct all inquiries to the OEO.

23. On or about March 20, 2023, Dr. Hall followed Murrill's instructions by calling the OEO. He spoke with Elaine Newton, an employee at the OEO.

24. Dr. Hall asked Ms. Newton for information about the allegation against him. He also request that the OEO obtain the video survelliance footage for the cameras located in the pharmacy where he worked. Ms. Newton told Dr. Hall that she could not provide information at the time, but she would have different OEO employee named Jess Morrison ("Morrison") call Dr. Hall to discuss the investigative process with Dr. Hall.

25. On or about March 22, 2023, Morrison called Dr. Hall and discussed the OEO's investigative process for sexual misconduct allegations. Dr. Hall specifically requested that the OEO conduct a thorough investigation. Morrison assured Dr. Hall that the OEO would thoroughly investigate the allegations, but stated he could not provide any details about the allegations to Dr. Hall at that time.

26. During this phone call, Morrison also promised that Dr. Hall would have an opportunity to participate in gathering evidence related to the allegations.

27. Surprisingly, Dr. Hall did not learn any other details about the alleged complaint until Morrison sent Dr. Hall a Notice of Complaint and Allegations on or about April 6, 2023. Morrison was the Associate Director & Deputy Title IX Coordinator at the OEO.

28. The Notice of Complaint and Allegations alleged that Dr. Hall engaged in Sexual Misconduct in the form of Sexual or Gender-based Harassment. Specifically, three female employees at the Sugarhouse Pharmacy alleged that Dr. Hall stared at their buttocks and breasts and engaged in excessive conversation with them. The allegations were exaggerated, embellished, or entirely false.

29. Dr. Hall quickly contacted Morrison to defend himself from the baseless allegations alleged by the three female employees.

30. On or about April 10, 2023, Dr. Hall again asked Morrison that the OEO must obtain video surveillance of the Sugarhouse Pharmacy for the following dates: March 13, 15, 16 and 17. Dr. Hall reminded Morrison that those videos would prove he did not engage in the conduct alleged by the three female employees.

31. Morrison responded by telling Dr. Hall that the OEO had not requested video surveillance and that Morrison did not believe the video was necessary for him to conduct the investigation.

32. On or about April 13, 2023, Dr. Hall provided a lengthy written response to the allegations of sexual misconduct, including describing his stellar employment record and describing his own concerns about the way the rude and abrasive conduct these female employees directed at Dr. Hall.

33. Following this phone call, Morrison sent Dr. Hall an email stating that he knew Mr. Choudhary and was recusing himself from investigating the matter "out of an abundance of caution" and to avoid "an inference of impartiality." Morrison also wrote that OEO Consultant Dominica Dela Cruz had been reassigned as the investigator.

34. The OEO then ostensibly investigated Janes' allegations. On or about November 1, 2023, the OEO issued a Draft OEO Report wherein it concluded that "cause" existed to find that Dr. Hall engaged in "sexual misconduct," as the term is defined in University Rule 1-012.

35. Attached to the Draft OEO Report were emails between the OEO and the Surveillance System Administrator Committee ("SSAC") showing the OEO requested video surveillance for March 13, 15, 16 and 17 on or about April 13, 2023. In fact, Morrison sent these emails after Dr. Hall had specifically asked Morrison to obtain the surveillance video and after Morrison was recused as the investigator.

36. Then, on June 9, 2023, the University's Associate Director of Ops & Logistics informed the OEO that most of the video was corrupt. However, the OEO provided no other information about what videos were corrupt, why this happened, the reason it took approximately two months to disclose the corruption, or what was done to recover the corrupt videos.

37. Apparently, the only date video surveillance available to the OEO was March 16th, which surprisingly prevented Dr. Hall from reviewing video surveillance of the other dates where the alleged misconduct happened. The OEO investigative report noted that it could not determine what happened on those dates without the video footage from the surveillance cameras.

38. Dr. Hall was devastated by the shocking revelation in the Draft OEO Report that the video he requested had been destroyed and retained legal counsel.

6

39. Under University Rule 1-012B, when a timely request for a hearing is filed, the OEO then convenes a hearing committee (the "Committee"). The Committee consists of five panel members.

40. On December 8, 2023, Mr. Dr. Hall specifically objected to Dustin Banks serving as the Chair of the Hearing Committee because Mr. Banks is a committee member on the SACC.

41. In response, the OEO's Hearing Coordinator stated that the objection was sent to Chair Dustin Banks and the Advising Attorney and "they have determined there is no substantial conflict in this case."

42. The University's Rule state, "A Committee member may be disqualified due to bias, conflict of interest, or for other good cause." Rule 1-012B(III)(4)(c). Furthermore, "If there is a challenge to the participation of any Committee member, the remaining Committee members shall hear that dispute and make a final decision about the participation of that member in the hearing." Rule 1-012B(III)(4)(c)(ii).

43. It turns out that not only did Dustin Banks serve on the SACC, but Garritson is also a member of the SACC.[1] Garritson was designated by Gina Hawley, the Chief Operating Officer for UUHC, to provide the recommended sanctions to the Hearing Committee. He also testified during the hearing regarding the same the appropriate sanctions the committee should impose on Dr. Hall.

44. As describe above, Garritson was also involved in delivering the Final Written Warning Notice and job reassignment and submitting the OEO complaint that Dr. Hall claimed was retaliation.

45. On December 18, 2023, the hearing took place before the Committee.

---

[1] See https://publicsafety.utah.edu/ssac/.

46. On January 2, 2024, the Committee issued only part of its report wherein they affirmed the finding of cause.

47. On January 8, 2024, Dr. Hall appealed the Hearing Committee Decision without receiving the full report, in which he addressed the significant procedural irregularities, conflicts of interest / bias of OEO Coordinators and Decision-Makers.

48. Dr. Hall's appeal also noted that Dr. Hall still had not received the entire decision by the Hearing Committee.

49. Specifically, the Hearing Committee's decision "shall include…a description of the procedural steps taken from the receipt of the Formal Complaint through the determination." University Rule 1-012B(III)(L)(b).

50. The Hearing Committee did not have to provide the full report to Dr. Hall. This was a clear violation of the University's policies and rules.

51. The University subsequently terminated Dr. Hall's employment on or about January 11, 2024, which was nearly 300 days after the Univerity placed him Dr. Hall on administrative leave.

**FIRST CAUSE OF ACTION**
**Violation of Title IX of the Education Amendments of 1972—Sex Discrimination**

52. Dr. Hall incorporates the allegations in the preceding paragraphs as if fully set forth herein.

53. Title IX provides, in relevant part, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

54. The University's employment of Dr. Hall at the Sugarhouse Pharmacy is an "educational program or activity" under Title IX.

8

55. The University receives federal funding.

56. Dr. Hall is a male.

57. Title IX prohibits sex discrimination against employees of universities and educational programs that receive federal funding—its protections are not limited to students.

58. Among other things, the University used false allegations by female employees, conducted a one-sided investigations by the OEO, allowed for the destruction of important video surveillance evidence, presumed Dr. Hall was guilty, did not provided Dr. Hall with a meaningful opportunity to gather evidence, and failed to follow its policies and Title IX.

59. In violation of the Title IX, Defendant intentional discriminated against Dr. Hall on the basis of his sex, and excluded Dr. Hall from the Defendant's programs, services, and activities.

60. As a result, Dr. Hall has suffered damages, both general and special, to be determined at trial.

61. Dr. Hall also seeks their costs, reasonable attorney's fees, prejudgment interest, post-judgment interest, and any other relief the Court deems appropriate under the circumstances.

**SECOND CAUSE OF ACTION**
**Deprivation of Procedural and Substantive Due Process Rights**
**42 U.S.C. § 1983**

62. Dr. Hall incorporates the allegations in the preceding paragraphs as if fully set forth herein.

63. In relevant part, 42 U.S.C. §1983 states the following:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the U.S. or other person within the jurisdiction thereof to the deprivation of any

9

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

64. The Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 7 of the Utah Constitution prohibit depriving any person of life, liberty, or property, without due process of law.

65. The University is a public institution of higher education and a state actor for purposes of the Fourteenth Amendment and Section 1983.

66. Procedural due process ensures the government will not deprive a party of a protected interest without engaging fair procedures to reach a decision. Substantive due process ensures the government will not deprive a party of a protected interest for an arbitrary reason regardless of the procedures used to reach that decision.

67. Dr. Hall possessed a property interest in his continued employment at the University.

68. Dr. Hall possessed a liberty interest in his reputation.

69. Among other things, the Universitu failed to afford Dr. Hall with the process provided for in the University's policies regarding OEO hearings, including a fair investigation, preservation on video evidence, and opportunity to review the full committee report before the final appeal .

70. Dr. Hall has been harmed by Defendant's unlawful acts and the violation of his constitutional rights.

71. The University's policy permitting the Committee's finding on sanctions and termination violated Dr. Hall's right to fair procedures in reaching a decision.

72. The University imposed a sanction that essentially ends Dr. Hall's career as a

pharmacist without any rational basis.

73. The cursory, brief and partial decision shows that they did not properly analyze all relevant evidence and material facts, and the sanction imposed was for arbitrary reasons, and lacked any rational basis.

74. As a result of Defendants' actions in violation of the Fourteenth Amendment to the Constitution of the United States, Plaintiff is entitled to instatement and an award of damages for Defendant's discriminatory actions, including but not limited to lost wages (in the form of back pay and, if appropriate, front pay), lost benefits, emotional harms, reputational harms, and other compensatory damages.

75. Dr. Hall also seeks recover of his attorney's fees pursuant to 42 U.S.C. § 1988(b).

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Dr. Hall demands a trial before a jury of his peers.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff Charles Hall requests judgment and relief against the Defendant as follows:

(1) A judgment ordering Dr. Hall's immediate reinstatement of his employment, or compensation in lieu of reinstatement;

(2) A judgment awarding Dr. Hall all damages caused by the deprivations set forth herein;

(3) A judgment Dr. Hall his reasonable attorney's fees and court costs, including any expert witness fees;

(4) A judgment awarding Dr. Hall prejudgment and post-judgment interest at the highest lawful rates; and

11

(5) A judgment awarding Dr. Hall such further and additional legal or equitable relief as the Court deems appropriate.

Dated this 25th day of June, 2024.

                                  STAVROS LAW P.C.

                                  /s/ Adam G. Clark
                                  Adam G. Clark
                                  *Attorney for Charles Hall*